**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

TIMOTHY COLLINS,                                                    Case No. 1:12-cv-152

                Plaintiff,                                        Weber, J.
                                                                    Bowman, M.J.

     v.


PATRICIA M. CLANCY, et al.,

                Defendants.


## REPORT AND RECOMMENDATION

### I.    Procedural Background

Proceeding under 42 U.S.C. §1983, Plaintiff Timothy Collins originally filed a civil rights case against multiple Defendants, alleging that they violated his constitutional rights during a criminal proceeding in state court.   Previously, Plaintiff voluntarily dismissed Green Township Police Officer Jeff Sabers, in his official and individual capacities, the Board of Trustees of Green Township, and the former and current Hamilton County Clerk of Court. (Docs. 30, 36, 99, 104).   Therefore, only four Defendants remain: the City of Cincinnati ("the City"), Police Officer Patrice Brooks, Police Sergeant Denica Gilmer, and private citizen Donna Kauffung.   The four Defendants have filed two separate motions for summary judgment, which have been referred to the undersigned magistrate judge for a report and recommendation. (Doc. 81).   For the reasons that follow, I now recommend that those motions be granted, and

that this case be dismissed.

## II.    Factual Background

Plaintiff Collins and Defendant Kauffung were involved in a romantic relationship that ended in 2007. That same year, Kauffung married another man, from whom she later separated and divorced.  In 2009, Kauffung sought a Civil Protection Order against Plaintiff Collins for stalking.  After filing an *ex parte* application, Kauffung was initially granted a temporary order.  Both Kauffung and Collins subsequently appeared *pro se* for a hearing before a state court magistrate.  On March 6, 2009, Kauffung was granted a permanent Civil Protection Order ("CPO") by Hamilton County Magistrate Bachman, which was thereafter signed into effect by a common pleas judge and served on him. (Complaint, Doc. 47 at 3, ¶12).

Magistrate Bachman made the following findings at the conclusion of the hearing:

> The evidence here is overwhelming.  The parties had dated previously but broke up and petitioner subsequently married another man.  It is clear that respondent is fixated on this woman and despite clear and unambiguous requests by petitioner, her husband and police, respondent has engaged in a pattern of conduct including calls, cards, and in person visits, all of which have caused her mental distress and has made her fear for her safety.  Even after I asked respondent if anybody was worth going to prison over if there were a violation, respondent would not say no but said that petitioner was a very special person.

Kauffung Deposition, Doc. 77-1 at 88.  Entering the CPO, Magistrate Bachman sternly directed Plaintiff to have no further contact with Defendant Kauffung, and not to give her anything on the way out of court, "including that box of flowers you have there."  *Id.*, Doc. 77-1, at 66.

The final CPO explicitly directed Collins, the "Respondent," not to have any

"contact" with Kauffung, the "protected person," for a period of five years:

> **RESPONDENT SHALL NOT INITIATE OR HAVE ANY CONTACT** with the protected persons named in this order at their residences, businesses, places of employment, schools, daycare centers, or childcare providers. Contact includes, but is not limited to, telephone, fax, e-mail, voice mail, delivery service, writings, or communications by any other means in person or through another person.  Respondent may not violate this order even with the permission of a protected person.

*Id.*, Doc. 77-1 at 88.

On or about March 26, 2009, Collins filed handwritten objections to the CPO, serving Kauffung with a file-stamped copy (also addressed in his handwriting) by mail addressed to her personal residence.  Ohio civil rules explicitly provide that a party may appeal a magistrate's final order by filing objections within fourteen days; the rules further require such objections to be served on the opposing party.  Kauffung received and examined the mailed document on March 27, 2009, identifying both the envelope and its contents as originating from Plaintiff.  She immediately took the envelope and its contents to the police, alleging Plaintiff had violated the above provision of the CPO by using the U.S. mail to contact her.

Police Officer Patrice Brooks was working at the front desk at the time.  Although Officer Brooks had no specific recollection of the incident at the time of her deposition, she testified to her customary procedure when determining whether probable cause existed for a civil protection order violation.

Kauffung did not have a copy of the CPO with her, but Officer Brooks testified that she could and did obtain "the specifics of the order" prior to signing the criminal

complaint, and the forms completed by Officer Brooks so note.[1]  (Doc. 75, Brooks Deposition at 164; Doc. 77, Kauffung Depo.at 30).  Officer Brooks questioned Kauffung[2] and examined the handwritten document mailed by Plaintiff, but did not identify it as a document filed in a civil court case.  She did not recognize the stamp of the civil Clerk of Court used to denote time and date of a filed document.  However, she further testified to her belief that the mailing by Plaintiff to Kauffung constituted a violation of the "no contact" provision of the CPO regardless of the type of document.  (Doc. 75, Brooks Depo. at 160, 162-163).  The documentation completed by Officer Brooks stated that probable cause existed for a violation of O.R.C. §2919.27, indicating that "known suspect violated protection order by sending a letter via US Postal Service," and that "Suspect contact's [sic] victim via US Postal Service in the form of a letter.  Which is in violation of Protection Order set in place by Judge Winkler ref Case #sk0900129, PO called Clerk's office to confirm."  (Doc. 75-1 at 8, 10).  The documentation filed in support of the arrest warrant included an affidavit signed by Defendant Kauffung, f/k/a Donna Hyden, which similarly attested that Plaintiff "did Knowingly violated [sic] protection order, by sending a letter via U.S. postal service."  (Doc. 75-1 at 15).  The affidavit was prepared by Officer Brooks.

Sergeant Denica Gilmer was working as the supervising officer the same day.

---

[1]Plaintiff points to equivocal testimony by Kauffung on whether she was sworn by a notary, but the undersigned finds no material issue of fact exists for purposes of the pending motions.  Similarly, Kauffung's obviously incorrect recollection that she was sworn by a male officer (Gilmer is female) is not material.

[2]Like the issue of whether Kauffung recalled she was sworn by a female notary, the undersigned finds the issue of whether Kauffung was "interviewed" by police, or merely "questioned," not to be material to disposition of the pending motions.

Sergeant Gilmer also lacked independent recollection of the incident at the time of her deposition, but it is undisputed that she notarized the signature of Kauffung on the affidavit, and confirmed that the facts presented did constitute a CPO violation.  (Doc. 92 at 4).  Like Officer Brooks, Sergeant Gilmer did not understand the nature of the handwritten document authored by Plaintiff, and did not recognize the Clerk's stamp as denoting a document filed in a civil case.  (Doc. 76, Gilmer Depo. at 72).

Based upon the submission of the affidavit and criminal complaint drafted by Brooks (whose name and badge number were clearly identified), signed by Kauffung, notarized by Gilmer, and transported to the Clerk by police on March 27, 2009, the Hamilton County Clerk of Court issued an arrest warrant the same day.  When Plaintiff learned shortly thereafter that a warrant had been issued for his arrest, he retained counsel, Mr. Charles McFarland.

In July 2009, represented by Mr. McFarland, Plaintiff appeared at a hearing on his objections to the CPO.  Defendant Kauffung appeared *pro se* at the same hearing. In response to a request by counsel to rescind the arrest warrant, Hamilton County Court of Common Pleas Judge Winkler stated that he did not have the jurisdiction over the arrest warrant:  "I don't really think I have jurisdiction over it, if it's going to be a new case number; but I would put on the record that sending a court notice or an objection would not be a violation."  (Doc. 77-1 at 6-7).  To resolve the warrant, he suggested that Plaintiff turn himself in. (*Id.* at 7).  However, Judge Winkler reduced the term of the CPO from five years to two years.

Plaintiff's attorney also filed a motion to rescind the arrest warrant in the Hamilton

5

County Municipal Court.  That motion was denied by Judge Russell on August 3, 2009.

Judge Russell's order was similar to that of Judge Winkler, to the extent that the order

states:  "The motion is hereby denied.  The Defendant [Collins] should turn himself in."

(Doc. 75-1 at 55).  Plaintiff declined to self-surrender, alleging that he feared losing his

job at a local casino if he did so.  Plaintiff left his casino job in 2010.

In February 2011, Plaintiff was arrested on the long-outstanding warrant after

being pulled over for a traffic violation.   He spent eleven and a half hours in jail,

overnight, and was arraigned and released the next day on an OR bond.   Trial on the

CPO violation charge was set for March 14, 2011, but Kauffung did not receive notice

because she had moved to a new address.   When Kauffung failed to appear, the

prosecutor sought but was denied a continuance, and the case was dismissed.

Plaintiff's second amended complaint alleges that the City of Cincinnati had a

custom or practice of referring citizen complaints to the Clerk for issuance of an arrest

warrant without probable cause, in violation of Ohio law and Plaintiff's Fourth

Amendment rights.[3] (Count II).  Plaintiff includes a similar "failure to train" claim against

the City.  (Count III).  Plaintiff further alleges that individual Defendants Brooks, Gilmer,

and Kauffung acted in concert to violate his Fourth Amendment rights, by causing an

arrest warrant to issue without probable cause. (Count IV).  Plaintiff includes a state law

false arrest and imprisonment claim against Defendants Brooks and Kauffung, but not

Defendant Gilmer.  (Count V).   He alleges that Brooks and Kauffung also committed

---

[3]Count I against the Hamilton County Clerk of Court has been dismissed.

the state tort of malicious prosecution. (Count VI). He brings a federal malicious prosecution claim, pursuant to 42 U.S.C. §1983, against the City, Brooks, Gilmer, and Kauffung. (Count VII). Last, he alleges retaliatory arrest against all four Defendants, in violation of his First Amendment right to file Objections to the CPO. (Count VIII).

### III. Analysis

### A. Summary Judgment Standard

In a motion for summary judgment, a court must view "the facts and any inferences that can be drawn from those facts - in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir.2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Id. (quoting Fed.R.Civ.P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's wholly unsupported allegations. After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586-87 (1986).  "The 'mere possibility' of a factual dispute is not enough."  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir.1986)).  In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255 (emphasis added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided.  *Id.* at 251-52.  Although reasonable inferences must be drawn in favor of the opposing party, *see Matsushita*, 475 U.S. at 587, inferences are not to be drawn out of thin air.  To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.*, 475 U.S. at 586-587 (citation omitted).

**B.  Grounds Asserted in Defendants' Motions**

Defendants Patrice Brooks, Denica Gilmer, and the City of Cincinnati have moved for summary judgment on all claims, arguing that: (1) they are entitled to qualified immunity; (2) Ohio law does not support a false arrest or false imprisonment claim against them; (3) all state and federal malicious prosecution claims fail because probable cause existed; (4) probable cause defeats Plaintiff's claim for retaliatory arrest; and (5) Plaintiff's failure to establish any constitutional violation dooms his §1983 claims

8

against the City.  Defendant Kauffung has separately moved for summary judgment. She primarily argues that: (1) she did not act under color of state law, but only in her role as a private citizen as instructed by police; and (2) probable cause existed to issue the warrant.[4]

Virtually all of Plaintiff's claims and most defenses center on the issue of probable cause.  Because I conclude that probable cause clearly did exist for issuance of the arrest warrant in 2009, I recommend that Defendants' motions be granted, and that all of Plaintiff's claims be dismissed.

### 1.    Qualified Immunity

Individual police Defendants Brooks and Gilmer both assert that they are entitled to qualified immunity on all claims brought against them in their individual capacities. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). The purpose of qualified immunity is to provide governmental officials with the ability to reasonably "anticipate when their conduct may give rise to liability for damages."  *See Anderson v. Creighton*, 483 U.S. 635, 646, 107 S. Ct. 3034, 3042 (1987)(internal quotation omitted). Thus, a governmental official performing discretionary functions will be entitled to qualified immunity unless his or her actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818.   A governmental official is entitled to immunity if the facts

---

[4]Defendant Kauffung additionally argues that any violation of Ohio's procedures by the Clerk of Court in issuing the warrant does not constitute a constitutional violation.  She asserts that any injuries sustained by Collins were caused either by Plaintiff himself or by the negligence of his criminal defense counsel, and that any damages sustained were nominal and are not compensable.  Because probable cause exists, it is unnecessary to reach these alternative arguments.

alleged do not make out a violation of a constitutional right, or if the alleged constitutional right was not clearly established at the time of the defendant's alleged misconduct.  *See generally Pearson v. Callahan*, 555 U.S. 223 (2009).  Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial.  *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001). The doctrine is intended to balance the following competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S.at 231.

When a defendant moves for summary judgment based on qualified immunity, the official must first show that she acted within discretionary authority. *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000).  Once an official makes this showing, the burden shifts to the plaintiff to prove that the officer violated a right so clearly established that any reasonable official in that position would have understood it was unreasonable to engage in the conduct that violated the right.  *Id.*  In this case, Plaintiff has made no claim that Defendants were acting outside their authority, so the burden falls on Plaintiff to overcome the qualified immunity defense.

Qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)(quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)); *see also Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008). Qualified immunity applies regardless of whether the official's error was a mistake of law or a mistake of fact, or a

mistake based on mixed questions of law and fact. *Pearson*, 555 U.S. at 231. On the facts presented, Plaintiff argues that neither Brooks nor Gilmer is entitled to qualified immunity. Plaintiff contends that his right to be free from arrest without probable cause was clearly established, and that the Defendant officers violated that right when they caused the issuance of a warrant for his arrest.

In determining whether a right is "clearly established" for purposes of the qualified immunity inquiry, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Saucier*, 533 U.S. at 202. This question must be answered "in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)(quoting *Saucier*, 533 U.S. at 201). The unlawfulness of the officer's conduct must be apparent in light of pre-existing law. *Anderson v. Creighton*, 483 U.S. at 640. "If officials of reasonable competence objectively could disagree on the law, immunity should be recognized." *Cameron v. Seitz*, 38 F.3d 264, 272 (6th Cir. 1994)(citing *Mumford v. Zieba*, 4 F.3d 429, 432 (6th Cir. 1993)). A probable cause determination that is reasonable in light of the totality of the circumstances at the time, even if ultimately determined to be incorrect, will support qualified immunity. *Jeffers v. Heavrin*, 10 F.3d 380, 381 (6th Cir. 1993). As discussed below, the undersigned concludes that both officers are entitled to qualified immunity based on the existence of probable cause at the time they caused the arrest warrant to issue.

### 2. The Probable Cause Determination

The Fourth Amendment provides individuals the right to be "to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures…," and that "no warrants shall issue, but upon probable cause…" U.S. CONST. amend. IV. "[I]t is well established that any arrest without probable cause violates the Fourth Amendment." *Crockett v. Cumberland College*, 316 F.3d 571, 580 (6th Cir. 2003)(citing *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001)). The issuance of an arrest warrant ordinarily demonstrates the existence of probable cause that would defeat a claim of false arrest. However, in this case Plaintiff contends that the arrest warrant does not provide a defense, because the Defendants "knowingly, deliberately, or with reckless disregard of the truth, made false statements or omissions that created a falsehood" that was "material to the finding of probable cause." (Doc. 91 at 8, citing *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010)(quoting *Wilson v. Russo*, 212 F.3d 781, 786-787 (3d Cir. 2000)(additional quotation marks omitted).

Defendants deny making any knowing or reckless falsehoods or omissions in the course of determining probable cause. They assert that the facts presented by Kauffung established probable cause to charge Plaintiff with a misdemeanor violation of the CPO under Ohio Revised Code §2919.27. The referenced statute prohibits any person from "recklessly" violating a civil protection order. Thus, the two elements of the criminal offense appear to be the "reckless" state of mind required, and the violation of a valid CPO by the person against whom it was entered.

"Generally, probable cause exists when the police have 'reasonably trustworthy information…sufficient to warrant a prudent man in believing that the [accused] had committed or was committing an offense.'" *Gardenhire v. Schubert*, 205 F.3d at 315

(quoting *Beck v. Ohio*, 379 US. 89, 91 (1964)).  The Sixth Circuit has explained:

> In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible…. But under § 1983, an arresting agent is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent.

*Parsons v. City of Pontiac*, 533 F.3d 492, 501 (6th Cir.2008)(citations and internal quotation marks omitted).  Thus, in a probable cause determination, an officer will be entitled to qualified immunity unless it is obvious that "the circumstances with which [the arresting officer] was confronted did not constitute probable cause."  *Fowler v. Burns*, 447 Fed. Appx. 659, 661 (6th Cir. 2011)(quoting *Anderson v. Creighton*, 483 U.S. at 641)).

> A reviewing court must assess the existence of probable cause "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Klein v. Long*, 275 F.3d 544, 550 (6th Cir.2001), *cert. denied*, 537 U.S. 819, 123 S.Ct. 95, 154 L.Ed.2d 26 (2002) (internal citations omitted).

*Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005).

That the CPO charge ultimately was dismissed prior to trial has no bearing on the validity of the warrant issued for Plaintiff's arrest. No Fourth Amendment violation is stated so long as probable cause existed on March 27, 2009 for Brooks' and Gilmer's belief that Collins had violated the law.  *See Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).

When Kauffung appeared at the police station on that date, Officer Brooks questioned her and reviewed the handwritten documents presented, which clearly

13

evidenced that Plaintiff had initiated contact with Plaintiff through the U.S. Postal Service.  Brooks also confirmed the existence of the CPO, including its prohibition on "any" contact by mail. Plaintiff does not deny that he had notice of the "no contact" provision of the CPO, or that he mailed the document to Kauffung's address.

Plaintiff's primary argument is that the officers should have recognized that the element of "recklessness" did not exist, because he was required by Ohio's civil rules to serve his Objections to the CPO on Kauffung. Focusing on the Defendants' description in support of the warrant that Plaintiff mailed a "letter" to Defendant Kauffung, Plaintiff argues that police should have identified the handwritten Objections for what they were – a type of legal appeal required to be served on Defendant Kauffung, either by Plaintiff or by the Clerk of Court on his behalf.  Plaintiff argues that police should have discerned from the face of the document that he possessed a valid legal defense to the criminal charge.

However, whether or not Plaintiff's legal defense ultimately would have resulted in acquittal, had the charges not been dismissed, is not at issue here.  Instead, this Court is called only to assess whether Officer Brooks reasonably believed on March 27, 2009 that the mailing constituted a reckless violation of the CPO. On that issue, and without the 20/20 vision of hindsight, this Court finds only one reasonable determination – that probable cause existed to issue the warrant.

Police confirmed both the existence and terms of the CPO,[5] including the prohibition on "ANY" contact initiated by Collins, including but not limited to contact by mail.  After questioning the protected party, Officer Brooks prepared a complaint and affidavit, in which Defendant Kauffung attested that Defendant Collins had violated the CPO by contacting her via the U.S. Postal Service.  Defendant Sergeant Gilmer read the affidavit and notarized the signature of Defendant Kauffung. There is no evidence that either Officer Brooks or Sergeant Gilmer recognized the document mailed by Plaintiff as within a special category of communications that would form an exception to the "no contact" directive.

Plaintiff asserts that the officers either intentionally or recklessly described the handwritten document as a "letter" rather than as "objections" in a civil case.  However, the precise description of the document was immaterial to the issuance of the arrest warrant.  No exceptions to the absolute "no contact" provision appear on the face of the CPO.  The express language of the CPO prohibits any contact by mail of any "writings, or communications by any other means."  The "Objections" were undeniably a "writing" or "communication" mailed by Collins to Kauffung in violation of those express terms.

Plaintiff may well have a valid argument that an *implicit* exception to the "no contact" rule should exist for legal documents pertaining to ongoing civil litigation and/or that he had a constitutional right to access to the Courts that could not be constrained

---

[5]Plaintiff offers a cursory argument that the filing of his Objections might have stayed enforcement of the CPO, citing Ohio Rule Civ. P. 53.  Defendants dispute that contention and, in part through the brevity of his argument, Plaintiff concedes that that the CPO was likely enforceable.  In any event, the officers would clearly be entitled to qualified immunity based upon their good faith belief, confirmed by their investigation, that a valid and enforceable CPO was in effect.

15

by the CPO. He might argue that an Ohio statute that authorizes a criminal penalty for the conduct in question is unconstitutionally overbroad.  Nevertheless, I cannot find on the record presented that the police violated Plaintiff's rights simply by failing to discover and recognize this defense to the crime with which Plaintiff was charged.  In short, it was reasonable for the officers to assume that the handwritten document mailed to Kauffung was a "writing" or communication that violated the "no contact" provision, and therefore that Collins had committed a crime under Ohio law.

Plaintiff asks this Court to go beyond the express terms of the CPO to require the officers to more closely examine and interpret the content of the document.  But without any stated exceptions in the CPO to its prohibition on contact with the protected party, it was inherently reasonable for the officers to believe the CPO was violated when confronted with the handwritten document addressed to Kauffung.  *Accord Michigan v. DeFillippo*, 443 U.S. at 36 (failure of officer to appreciate that ordinance would be declared unconstitutional did not negate probable cause).

Plaintiff seems to focus on the officers' failure to understand and/or conclude that his compliance with a civil rule should not be deemed to satisfy the criminal intent required of "recklessness."  Lacking evidence of his criminal intent, Plaintiff contends that the officers could not have had probable cause to believe that he had committed a crime. *See Gardenhire v. Schubert*, 205 F.3d at 318 (a "police officer has probable cause only when he discovers reasonably reliable information that the suspect has committed a crime."); *Radvansky,* 88 F.3d at 305 ("Police officers may not 'make hasty, unsubstantiated arrests with impunity,' nor 'simply turn a blind eye toward potentially

exculpatory evidence known to them in an effort to pin a crime on someone.'")(quoting

*Ahlers v. Schebil*, 188 F.3d 365, 371-72 (6th Cir. 1999)).  However, Plaintiff's argument

would require a level of certainty that a crime has been committed that is much more

stringent than is required under the Fourth Amendment.

> Notably, "[t]he Fourth Amendment does not require that a police officer
> know a crime occurred at the time the officer arrests or searches a
> suspect. . .The Fourth Amendment, after all, necessitates an inquiry into
> probabilities, not certainty." *United States v. Strickland*, 144 F.3d 412, 415
> (6th Cir. 1998). Probable cause is not equivalent to proof beyond a
> reasonable doubt. *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002);
> *Draper v. United States*, 358 U.S. 307, 311-12 (1959)(The quantum of
> proof required to establish probable cause is significantly lower than that
> required to establish guilt). Thus, knowledge as to all elements of the
> alleged offense is not required in order to establish probable cause.
> Notably, "the quantum of proof required to establish probable cause is
> significantly lower than that required to establish guilt." *Draper v. United
> States*, 358 U.S. 307, 311-12 (1959). "'Probable cause is defined as
> reasonable grounds for belief, supported by less than prima facie proof but
> more than mere suspicion.'" *United States v. McClain*, 444 F.3d 556, 562
> (6th Cir .2005) (quoting *United States v. Ferguson*, 8 F.3d 385, 392 (6th
> Cir.1993)(*en banc*)).

*Phillips v. Hubbard*, 2012 WL 3542640, Case No. 1:11-cv-87 (S.D. Ohio, August 16,

2012).  In *Phillips*, the undersigned and the same district judge assigned to this case

rejected an argument similar to that presented here - that the arresting officer did not

have evidence of every element of the crime for which the defendant was arrested.  The

Court held that the probable cause standard is satisfied when officers are presented

with sufficient evidence to believe that a crime has been committed by the accused,

even if they do not have evidence of each element.  *Id.*, R&R adopted at 2012 WL

5378808; a*ccord Nerswick v. CSX Transp., Inc.*, 682 F.Supp.2d 866 (S.D. Ohio

2010)(Weber, J., granting summary judgment on probable cause issue based on

information available to officers at time of probable cause determination).

Several Ohio cases confirm the conclusion that probable cause existed at the time the arrest warrant was issued in this case. In *Alagha v. Cameron*, 2009 WL 2974892, 2009 Ohio App. LEXIS 4146 at 2-3 (Ohio 1st Dist. Ct. App. 2009), a woman reported that her ex-husband had violated a CPO, and a police officer signed the complaint after interviewing the victim. Mr. Alagha raised as a defense an assertion that he had never been served with the CPO. After being acquitted by a jury, Mr. Alagha sued both the officer and the City, alleging malicious prosecution. The Ohio Court affirmed summary judgment on qualified immunity grounds, finding that the victim's oral and written statements, together with confirmation of the existence of the CPO, provided the officer with probable cause to believe that the ex-husband had violated the CPO.

Cited by both Plaintiff and Defendants, the case of *City of Toledo v. Hughes*, 174 Ohio App.3d 598 (Sixth Dist. Ohio Ct. App. 2007), is particularly close on point factually. There, Mr. Hughes was subject to a CPO that prohibited all contact between him and a person whom he had sued in small claims court. After an adverse decision in small claims court, Mr. Hughes filed objections. A staff member at the division clerk's office instructed him to mail a copy of his objections to the opposing party. As in the case presented, Mr. Hughes did so. He was then charged and convicted after a bench trial with violating the CPO. The Sixth District Court of Appeals reversed his criminal conviction on appeal, after determining that the state had failed to prove that Mr. Hughes acted "recklessly."

Defendants parse minor factual distinctions between the case presented and

18

*Hughes*, noting that Plaintiff here did not mail the copy of his Objections under direct instruction from the Clerk of Court.  Defendants further assert that Plaintiff's document should be viewed through a different contextual lens, because it was handwritten[6] and described Kauffung's prior testimony as slanderous and perjured.  However, in both *Hughes* and this case, service of the "objections" was required by Ohio's civil rules.  Nevertheless, *Hughes* ultimately supports Defendants' position that probable cause existed.  Not only did police find probable cause to issue an arrest warrant in *Hughes*, but Hughes was initially convicted of violating the CPO "beyond a reasonable doubt" after a bench trial.  The appellate court overturned the conviction not because of a lack of probable cause underlying the Defendant's arrest (which, to be fair, was not challenged), but instead because "[t]here is no indication that appellant understood that his conduct could be perceived as an attempt to circumvent the protection order."  The Ohio court stopped short of holding that service of objections could never violate a "no contact" provision of a CPO.  In other words, the court implied that the conviction might have been affirmed -- despite the fact that service was required under civil rules -- if the State had shown that Mr. Hughes knew or should have known that service of the objections would violate the CPO.  Thus, *Hughes* implicitly supports Defendants' contention that probable cause existed on the facts presented here, despite also providing support for Collins' contention that he might have been acquitted after trial.

In a third case cited by Defendants, *State v. Frazier,* 158 Ohio App.3d 407 (1st Dist. Ct. App. 2004), the defendant sent three letters to his wife's residence, all of which

---

[6]The facts in *Hughes* do not indicate whether the objections were handwritten or typed.

were addressed to the family cat.  The Ohio court concluded that "the court was justified in rejecting that transparent ruse and finding that Thomas Frazier was attempting to contact the persons listed in the protection order."  Defendants argue that here, Plaintiff Collins' "objections" to the CPO were so lacking in any factual or legal basis, that they were analogous to the "ruse" in *State v. Frazier*, insofar as the objections were allegedly filed as "another effort to communicate with [Kauffung]."  (Doc. 85 at 11).  Like many of Plaintiff's arguments, however, this argument confuses the ultimate issue of Plaintiff's criminal intent with whether probable cause existed for his arrest.

On the record presented, probable cause existed for the issuance of the arrest warrant, because the officers conducted a reasonable investigation to determine that the CPO had been violated.  It would have been unreasonable to expect the officers – merely through examination of the envelope and document that Plaintiff mailed to Kauffung – to: (1)  understand the legal significance of the document under Ohio's civil rules of procedure; (2) know that compliance with a civil rule requiring service of process in a civil case could constitute an exception to the prohibition on "ANY" contact contained in the CPO; and (3) understand that Plaintiff's mailing of Objections might preclude his criminal conviction here.[7] The fact that the officers did not have proof of criminal recklessness did not preclude a reasonable determination of probable cause to

---

[7]Defendants strenuously argue that Plaintiff still could have been convicted, had charges not been dismissed, based upon the particular circumstances presented in this case. Comparing Plaintiff's intent to that of the defendant in *Frazier*, Defendants suggest the "Objections" were "contrived" and were mailed "for the purpose of harassment and retaliation." (Doc. 86 at 13-14).  To the extent supported by *Hughes*, the undersigned agrees that the mailing of Objections to a court order does not provide an automatic and airtight defense, because other evidence of criminal intent may be used by the prosecution to prove recklessness.

issue an arrest warrant based upon the facts that they were able to determine: that Collins used the U.S. Postal Service to mail a handwritten document to Kauffung's home address in an apparent violation of the express terms of an existing CPO. *Accord, United States v. Everett*, 719 F.2d 1119, 1120 (11th Cir. 1983)(*per curiam*)("While intent is an element of the crime which must be proved at trial, it is not necessary in order to establish probable cause to arrest)(additional citations omitted).

### 3. Claims for False Arrest, False Imprisonment, and Malicious Prosecution Under State Law

Defendants note correctly that false arrest and false imprisonment are indistinguishable claims under state law.  To prevail on either, Plaintiff must establish an intentional, unlawful detention. Neither of the two Defendant officers detained Plaintiff Collins when they issued a warrant in 2009; he was instead arrested in 2011 by a Green Township officer who was previously dismissed from this lawsuit.  Officer Brooks and Sergeant Gilmer can be held liable for false arrest only if they caused a warrant to issue without probable cause.  Since probable cause existed, they are entitled to summary judgment on the claims against them for false arrest and false imprisonment.  In light of the existence of probable cause, Officer Brooks and Sergeant Gilmer are also entitled to immunity under O.R.C. §2733.03(A)(6).  There is no evidence that either officer acted with a malicious purpose, in bad faith, or in a wanton or reckless manner.

For the same reason, Plaintiff also cannot prevail on his state law claim of malicious prosecution against any of the four Defendants.[8] *See generally Wiley v.*

---

[8]Defendants argue that Plaintiff might have been convicted had the charge not been dismissed based

*Oberlin Police Dept.*, 330 Fed. Appx. 524, 529-530 (6th Cir. 2009)(state claim foreclosed by existence of probable clause); *see also Martin v. City of North College Hill*, 2008 WL 4070275 at *7 (S.D. Ohio Aug. 27, 2008)(Weber, J., granting summary judgment on malicious prosecution based upon probable cause determination); *Douglas v. Swing*, 2011 WL 3497292 at *6 (S.D. Ohio, Aug. 10, 2011)(Weber, J., granting summary judgment on related state law claims for false arrest, false imprisonment, and malicious prosecution, based upon probable cause for arrest).

    **4.    Malicious Prosecution Under 42 U.S.C. §1983**

    The Sixth Circuit recognizes malicious prosecution as a separate constitutional claim under the Fourth Amendment, which "encompasses wrongful investigation, prosecution, conviction, and incarceration." *Sykes v. Anderson*, 625 F.3d at 308 (citing *Wallace v. Kato*, 549 U.S. 384, 390, (2007)). To succeed on a malicious-prosecution claim under § 1983, when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove that: (1) a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty under the Fourth Amendment, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Id.* Consistent with the state law claim, Plaintiff's

---

upon Ms. Kauffung's failure to appear as a witness.  It is worth noting that malicious prosecution requires a favorable termination of the prior proceeding.  Although the undersigned found no Ohio case directly on point, other jurisdictions hold that termination based upon the failure of a key witness to appear does not satisfy that element.  *Compare Bettis v. Pearson*, 2007 WL 2426404 at *14 (E.D. Tenn. Aug. 21, 2007); *Caudill v. Felder*, 2010 WL 411474 at *5 (E.D. Ky., Jan. 29, 2010).

federal malicious prosecution claim also fails based upon the existence of probable cause for issuance of the warrant.

### 5. Other Claims Brought Pursuant to 42 U.S.C. §1983

The existence of probable cause also defeats Plaintiff's other §1983 claims, including his claim against the two officers for "retaliatory arrest." *Accord, Barnes v. Wright*, 449 F.3d 709, 720 (6th Cir. 2006). Likewise, the City of Cincinnati is entitled to summary judgment on claims filed against it because Plaintiff has failed to show the existence of any constitutional violation. *Gorcaj v. Medulia*, 51 Fed. Appx. 158, 159 (6th Cir. 2002).

While brought under 42 U.S.C. §1983, Plaintiff's claims against the City emphasize alleged procedural violations of Ohio Rev. Code §2935.09, and the City's alleged failure to properly train its officers concerning the procedure required to be followed prior to issuance of an arrest warrant. (Doc. 47 at ¶¶33-39. ¶¶68-85). (Counts II and III). Plaintiff alleges that the Clerk of Court had a duty to refer the documentation, including Kauffung's affidavit, to a judge, magistrate or prosecutor for review prior to issuing an arrest warrant. However, Plaintiff previously dismissed the former and current Clerk of Court from this action. Notably, Plaintiff concedes that Ohio law permits police to execute affidavits to initiate criminal proceedings upon probable cause. (Doc. 47 at 8, ¶41). In fact, the statute cited by Plaintiff expressly provides that a police officer may file an affidavit directly with the clerk of court in order to institute criminal proceedings. *See also State v. Sizer*, 25 Ohio Misc. 245, 265 N.E.2d 468 (Ohio Common Pleas Court, Montgomery County, 1970).

Of course, Plaintiff's central allegation is that it was the policy of the City of Cincinnati's police department to rely on private complainants and file criminal charges and have arrest warrants issued *without* "sufficient evidence to establish that there was probable cause to do so." (Doc. 47 at 8, ¶42). Plaintiff's malicious prosecution and retaliatory arrest claims against the City further allege that the City "participated in" the decision to prosecute Plaintiff and was the "moving force" behind his arrest. (Doc. 47 at ¶¶107, 123). Plaintiff provides some evidence that the Clerk relied upon police documentation when issuing the arrest warrant. (Poland Depo. Doc. 78 at 139-140).

The issue of whether the City violated or encouraged violation of a state procedural requirement is relevant only insofar as Plaintiff can prove that the City caused a constitutional violation. Again, because probable cause existed for issuance of the arrest warrant, the City is entitled to judgment as a matter of law.

## IV. Conclusion and Recommendation

For the reasons discussed, **IT IS RECOMMENDED HEREIN** that Defendants' motions for summary judgment (Docs. 85, 86) be **GRANTED** and that this case be dismissed with prejudice and **CLOSED**.

        *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

TIMOTHY COLLINS,                                           Case No. 1:12-cv-152

          Plaintiff,                                     Weber, J.
                                                          Bowman, M.J.
    v.

PATRICIA M. CLANCY, et al.,

          Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).