# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TIMOTHY COLLINS,

                    Plaintiff,

v.                                          Case No. 1:12-cv-152-HJW

PATRICIA M. CLANCY, et al,

                    Defendants

### ORDER

        Pending are the "Motion for Summary Judgment" (doc. no. 86) by defendant Donna (Hyden) Kauffung and the "Motion for Summary Judgment" (doc. no. 85) by the defendant City of Cincinnati, Officer Patrice Brooks, and Sgt. Denica Gilmer.[1] The Magistrate Judge entered a Report and Recommendation (doc. no. 106), recommending that both motions be granted. Plaintiff filed objections, defendants responded, and plaintiff replied (doc. nos. 110, 112, 113). Upon *de novo* review, and having fully considered the briefs, exhibits, recommendations, objections, and applicable authority, the Court agrees with the Magistrate Judge. The Court will therefore <u>overrule</u> the objections and <u>grant</u> summary judgment in favor of the defendants for the following reasons:

## I. Background

        The Magistrate Judge has fully recited the relevant facts in the Report and

---

[1] The Court's Scheduling Order (doc. no. 24, ¶ 6) requires the proponent of a dispositive motion to file proposed findings of fact and conclusions of law, which the opponent must then highlight as true, false, or irrelevant. The parties have not complied with the plain language of the order. To avoid further delay, and as the parties' briefs sufficiently identify the relevant facts and legal issues, the Court will, in this instance, excuse the failure to comply.

1

Recommendation (doc. no. 106), which is incorporated herein by reference. To summarize, on February 20, 2009 Donna Hyden sought a temporary civil protection order ("CPO") against Timothy Collins for stalking her after their relationship ended in 2007. After their break-up, she eventually married someone else and changed her last name to Kauffung. Her petition for a CPO indicated that Collins had been harassing her and refusing to leave her alone (i.e., by making repeated phone calls, sending letters, coming by her residence, banging on her door, showing up at her children's places of employment, and waiting for her in the early a.m. at her bus stop). She indicated Collins had recently become more aggressive in pursuing her and that this was causing her to "feel very uneasy and it's scaring me" (doc. no. 77-1 at 85). The CPO form provides that pursuant to Ohio R.C. § 2903.211(A)(1) ("Menacing by Stalking"), "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person" (Id. at 83).[2]

　　　In state court, Magistrate Bachman held a full hearing on March 6, 2009, with the pro se parties both present. The evidence (described as "overwhelming")

---

[2] Ohio law specifically authorizes courts "to issue protection orders designed to ensure the safety and protection of a complainant in a domestic violence case." Felton v. Felton, 79 Ohio St.3d 34, 37 (1997). A trial court may issue an ex parte temporary CPO where there is an immediate and present danger of domestic violence. Ohio R.C. 3113.31(D)(1). After conducting a full hearing, the trial court may issue a CPO for a term of up to five years. Id. at (E)(1) and (3)(a). Ohio R.C. 3113.31 gives the trial court "extensive authority to tailor the domestic violence protection order to the exact situation before it at the time." Felton, 79 Ohio.St.3d at 38; Martin v. Martin, 2013 WL 6843599, *2, ¶ 7 (Ohio App. 10 Dist.).

reflected that Collins would not stop bothering Kauffung. Mag. Bachman found that "despite clear and unambiguous requests by petitioner, her husband and police, [Collins] has engaged in a pattern of conduct including calls, cards, and in person visits, all of which have caused her mental distress and has made her fear for her safety." In fact, Collins even inappropriately brought flowers for Kauffung to the hearing.

Mag. Bachman issued a temporary CPO and ordered Collins: "You shall not initiate or have any contact with her at her residence, business, place of employment. Contact includes, but is not limited to, telephone, fax, e-mail, voice mail, delivery service, writing, text message, communication by any means. Is that clear, sir?" Collins responded affirmatively. On March 11, 2009, the order was adopted by the Hamilton County Court of Common Pleas, which issued a permanent CPO directing Collins not to have <u>any contact</u> with Kauffung for five years (i.e. until February 19, 2014). Specifically, the permanent CPO provided:

> **RESPONDENT SHALL NOT INITIATE OR HAVE ANY CONTACT** with the protected persons named in this order at their residences, businesses, places of employment, schools, daycare centers, or childcare providers. Contact includes, but is not limited to, telephone, fax, e-mail, voice mail, delivery service, writings, or communications by any other means in person or through another person. Respondent may not violate this order even with the permission of a protected person.

(doc. no. 77-1 at 88, copy of "Civil Stalking Protection Order" signed by Judge Ralph Winkler, entered March 11, 2009). A copy of the CPO was served on Collins. Although Collins had acknowledged at the hearing that Kauffung was "a person of honor" and that "all of these complaints that she voices here I believe to be true

3

and accurate" (doc. no. 77, Ex. 15 at 36), he then handwrote seven pages of objections describing her testimony as "slanderous" and "perjured." He objected to any implication that he had "threatened" her and insisted that he had only approached and tried to talk to her at a bus-stop because he wanted to give her an engagement ring, even though she told him repeatedly to leave her alone.[3] Collins filed his objections with the Hamilton County Clerk of Courts on March 26, 2009.

Without consulting a lawyer or requesting service by the Clerk of Courts, Collins also addressed an envelope to Kauffung, handwrote his return address on it, and mailed a copy of the objections to Kauffung at her residence. He could have asked the Hamilton County Clerk to serve the objections, but admittedly did not do so (Collins Dep. at 225-26; doc. no. 71-1, pre-printed court form for "Written Requests for Service," including in "domestic" cases). After Kauffung received this hand-written envelope from Collins on March 27, 2009, she took it to the police station (District Three), indicating her belief that Collins had thereby violated the CPO's express prohibition against initiating "ANY CONTACT" with her.

Police Officer Patrice Brooks was on duty and spoke with Kauffung, who showed her the handwritten envelope with Collins' return address on it. Kauffung told the officer she recognized Collins' hand-writing. Officer Brooks indicates that

---

[3] Collins' objections to the CPO are premised on his own *inaccurate characterization* of Kauffung's testimony before Mag. Bachman (Collins Dep. at 106-108). Collins admitted this at deposition (Id. at 120). For example, Collins disputed that he was "yelling" at Kauffung and "threatening" her at the bus-stop, but the record does not reflect that she so testified. Hence, the defendants' suggestion that Collins' objections to the CPO were a "contrived" and improper attempt to contact Kauffung finds some support in the record.

the handwritten pages did not look like a court document (Brooks Dep. at 160). Officer Brooks then confirmed that an anti-stalking CPO was in place against Collins. Kauffung signed an affidavit attesting that Collins had contacted her by mail. The supervisor on duty, Sgt. Gilmer, notarized the affidavit. The police filled out a criminal complaint form, which Kauffung signed (doc. no. 72-3 at 36, "Complaint"). Such documentation indicated that "known suspect violated protection order by sending a letter via US Postal Service" and that "Suspect contact's [sic] victim via US Postal Service in the form of a letter. Which is in violation of Protection Order set in place by Judge Winkler ref Case #sk0900129, PO called Clerk's office to confirm" (doc. no. 75-1 at 8, 10). The police filed the complaint and affidavit with the Hamilton County Clerk of Courts, which issued a warrant for Collins' arrest for violation of Ohio R.C. § 2919.27 (entitled "Violating . . . Anti-Stalking Protection Order"). Ohio R.C. § 2919.27 (A)(2) provides that: "No person shall recklessly violate . . . a protection order issued pursuant to . . . section 2903.14 of the Revised Code."

When Collins learned of the arrest warrant, he retained counsel (Mr. Charles McFarland), but did not surrender to police. He later indicated that he did not want to risk losing his casino job by being arrested.[4] In July 2009, Collins appeared with his counsel at the Hamilton County Court of Common Pleas for a hearing on his objections to the CPO. Kauffung appeared pro se. At the hearing, Judge Winkler indicated he would reduce the term of the CPO to two years (doc. no. 77-1 at 75, 79,

---

[4] Collins took a job as a "fleet driver" for AAA in 2010 (doc. no. 71-12).

5

81). When counsel inquired about the arrest warrant, Judge Winkler stated that he did not have jurisdiction over the arrest warrant (which was issued by the Hamilton County Municipal Court) and indicated that Collins should voluntarily surrender to police (Id. at 75-76).

Instead of surrendering, Collins (through counsel) filed a motion to rescind the arrest warrant in the Hamilton County Municipal Court. Municipal Judge Russell denied the motion on August 3, 2009 and instructed Collins to voluntarily surrender. Again, Collins did not do so. He later testified that he believed (incorrectly) that his arrest warrant would expire when the CPO expired (Collins Dep. at. 271). On February 22, 2011, Collins was pulled over for a traffic violation and was arrested on the warrant (doc. no. 110 at 14). After less than 12 hours in custody, he was released on bond. Trial on the CPO violation charge was set for March 14, 2011. Kauffung did not appear because she had moved and did not receive notice of the hearing. Although the prosecutor requested a continuance in order to subpoena her, the court denied such request and dismissed the case for "want of prosecution" (doc. no. 71-11 at 4).

On February 21, 2012, Collins, through new counsel, filed a federal complaint against seven defendants, alleging violation of 42 U.S.C. § 1983, false arrest and imprisonment, and malicious prosecution. In a "First Amended Complaint" (doc. no. 37), he omitted any claims against the arresting officer (Green Township Police Officer Jeff Sabers) and the Board of Trustees of Green Township. In an eight-count "Second Amended Complaint" filed on January 31,

2013 (doc. no. 47), he added a defendant (Sgt. Gilmer) and asserted more § 1983 claims. This Court subsequently granted Collin's unopposed motion to dismiss two defendants -- Patricia Clancy and Tracy Winkler (respectively, the former and current Hamilton County Clerk of Courts) -- from this case (doc. no. 104, Order).

Plaintiff brings the following claims: Count I alleges a § 1983 claim only against the Clerk of Courts, who has already been dismissed as a party. Counts II-IV, VIII allege claims under § 1983, all premised on the general allegation that Collins had a right "not to be arrested upon [a] warrant without probable cause" (doc. no. 47, ¶¶ 68-94, 114-126). Counts II, III, and VIII include the allegation that the City failed to train its police officers properly thereby leading to Collins' arrest and prosecution "without probable cause" (¶¶ 71, 81, 122). Count V alleges false arrest and false imprisonment based on the alleged lack of probable cause. Counts VI-VII allege malicious prosecution under state and federal law.

The City of Cincinnati, Officer Brooks, and Sgt. Gilmer moved for summary judgment, primarily asserting that 1) probable cause existed to issue the arrest warrant and to prosecute Collins, 2) the officers are entitled to qualified immunity, and 3) Collins has not shown the violation of any constitutional right (doc. no. 85). Defendant Kauffung filed a separate motion for summary judgment, asserting primarily that: (1) she is a private citizen who did not act "under color of state law," (2) the police had probable cause to issue the arrest warrant, and 3) no constitutional violation occurred (doc. no. 86).

## II. Summary of the Magistrate Judge's Recommendations

7

The Magistrate Judge issued a Report and Recommendation on January 15, 2014 (doc. no. 106). After setting forth the applicable standard for summary judgment review, she pointed out that "[v]irtually all of plaintiff's claims . . center on the issue of probable cause" (Id. at 9). She reviewed the evidence and concluded that "on the record presented, probable cause existed for the issuance of the arrest warrant" and that the police officers were entitled to qualified immunity on all claims against them in their individual capacities (Id. at 11). Regarding the claim of false arrest/imprisonment, the Magistrate Judge indicated:

> [P]laintiff must establish an intentional, unlawful detention. Neither of the two Defendant officers detained Plaintiff Collins when they issued a warrant in 2009; he was instead arrested in 2011 by a Green Township officer who was previously dismissed from this lawsuit. Officer Brooks and Sergeant Gilmer can be held liable for false arrest only if they caused a warrant to issue without probable cause. Since probable cause existed, they are entitled to summary judgment on the claims against them for false arrest and false imprisonment. In light of the existence of probable cause, Officer Brooks and Sergeant Gilmer are also entitled to immunity under O.R.C. § 2733.03(A)(6). There is no evidence that either officer acted with a malicious purpose, in bad faith, or in a wanton or reckless manner.

(Id. at 21-22). Finally, the Magistrate Judge recommended that the existence of probable cause precluded plaintiff's state and federal claims for malicious prosecution, and that the City of Cincinnati was entitled to summary judgment because plaintiff had "failed to show the existence of any constitutional violation" (Id. at 22-23). The Magistrate Judge concluded that both motions for summary judgment should be granted. Plaintiff has filed objections.

## III. Review of Objections

The Magistrate Judge Act, 28 U.S.C. § 631 et seq., provides for *de novo* review by the District Court when a party timely files written objections to the recommendations of the Magistrate Judge. Objections must be <u>*specific*</u>; generalized objections that do not adequately "specify the issues of contention" are not sufficient to satisfy the requirement of specific objections. <u>Miller v. Currie</u>, 50 F.3d 373, 380 (6th Cir. 1995); <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 509 (6th Cir. 1991) (observing that a "general objection to the entirety of the magistrate's report has the same effects as would a failure to object").

Plaintiff has filed 33 pages of generalized objections which largely restate facts and prior arguments. It is well-settled that simply restating prior arguments does not amount to a proper objection. See, e.g., <u>Holl v. Potter</u>, 2011 WL 4337038, *3 (S.D.Ohio) ("Objections that merely restate arguments raised in the memoranda considered by the Magistrate Judge are not proper"), aff'd by 506 Fed.Appx. 428 (6th Cir. 2012); <u>Harris v. Morgan</u>, 2012 WL 2505838, *1 (N.D. Ohio) ("An 'objection' that . . . simply summarizes what has been presented before . . . is not an 'objection' as that term is used in this context."); <u>Miller v. Astrue</u>, 2013 WL 504017, *1 (S.D.Ohio) (J. Barrett) (same). Despite the generality and repetitiveness of plaintiff's objections, the Court has conducted *de novo* review.

<u>IV. Discussion</u>

<u>A. Kauffung was a Private Individual not Acting "Under Color of State Law"</u>

First, although the Magistrate Judge appropriately focused on the issue of probable cause to arrest and prosecute Collins, the Court observes that Collins

has no cause of action under 42 U.S.C. § 1983 against Kauffung as a private individual. To state a § 1983 claim, plaintiff must show he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." <u>Am. Mfrs. Mutual Ins. Co. v. Sullivan</u>, 526 U.S. 40, 49–50 (1999). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." <u>Id</u>. at 50. Kauffung was a private individual and was not acting "under color of state law." See <u>Tahfs v. Proctor</u>, 316 F.3d 584, 590 (6th Cir. 2003) (affirming dismissal of § 1983 claim because defendants "could not be considered state actors for § 1983 purposes"); <u>Doyle v. Schumann</u>, 2008 WL 397588, at * 3 (N.D.Ohio) (explaining that a person acting "under color of law" is usually a state or local government official); <u>Garrett v. Fisher Titus Hosp</u>., 318 F.Supp.2d 562, 573 (N.D.Ohio 2004) ("The mere fact that the individual defendants were complainants and witnesses in an action which itself was prosecuted under the color of law does not make their complaining or testifying other than what it was, i.e., the action of private persons not acting under the color of law.").

> **B. Objections #1-5, Probable Cause to Issue the Arrest Warrant**

The Magistrate Judge considered whether the police had probable cause to believe that Collins had violated the anti-stalking civil protection order's prohibition against "ANY CONTACT" with Kauffung. She recommended that "it was reasonable for the officers to assume that the handwritten document mailed to Kauffung was a 'writing' or communication that violated the 'no contact'

provision, and therefore that Collins had committed a crime under Ohio law" (doc. no. 106 at 16). She recommended that under all the circumstances, the police reasonably determined that there was probable cause to issue the arrest warrant and file the criminal complaint against Collins. The Court agrees.

The United States Supreme Court has explained that "probable cause to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979); Beck v. Ohio, 379 U.S. 89, 91 (1964); U.S. v. Torres–Ramos, 536 F.3d 542, 555 (6th Cir. 2008). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." U.S. v. Pearce, 531 F.3d 374, 380–81 (6th Cir. 2008) (quoting Devenpeck v. Alford, 543 U.S. 146, 152 (2004)). It is undisputed that Kauffung showed the police the hand-written envelope she had just received from Collins. She indicated that Collins was subject to an anti-stalking CPO and that she recognized his hand-writing. It is undisputed that the documentation for the arrest warrant reflects that the police confirmed the existence of the CPO against Collins.

Although Collins objects that there is "no evidence" that the police confirmed the "specifics" of the CPO (doc. 110 at 10), Collins mischaracterizes the record. Given the passage of time, Officer Brooks candidly testified at deposition that she did not recall whether she had seen the actual CPO. Officer Brooks did,

however, indicate that she could confirm the "specifics" of the CPO on the computer system and that it would be standard procedure to do so. When asked if she had documented that she had in fact checked, Officer Brooks replied, "Yes, correct." (doc. no. 112 at 3, citing Brooks Dep., doc. no. 75 at 164).[5] Given that Collins contacted Kauffung by mail (despite having an alternative means of serving her with a copy through the Clerk of Courts), and given that the police confirmed that there was a current anti-stalking CPO against him, this was sufficient to provide probable cause for issuance of the arrest warrant.

Pursuant to Ohio R.C. § 737.11, police officers have the duty to enforce "all protection orders issued pursuant to section 2903.213 or 2903.214 of the Revised Code." Defendants correctly point out that when a police officer considers whether probable cause to arrest exists, all that is constitutionally required is the kind of "fair probability' on which 'reasonable and prudent [people,] not legal technicians, act" (doc. no. 112 at 4, quoting Florida v. Harris, 133 S.Ct. 1050, 1055 (2013). The Supreme Court has explained that "[f]inely tuned standards such as proof beyond a reasonable doubt . . . have no place in the decision." Id. (quoting Illinois v. Gates, 462 U.S. 213, 235 (1983) (emphasizing that the determination of probable cause is a "flexible, common-sense standard")). Collins' arguments depend largely on his own assumption that he did *not* violate the CPO by mailing

---

[5] Plaintiff's mischaracterization of the evidence does not establish any genuine dispute of material fact. "When no material dispute of fact exists, probable cause determinations are legal determinations that should be made by the court." Alman v. Reed, 703 F.3d 887, 896 (6th Cir. 2013) (quoting Hale v. Kart, 396 F.3d 721, 728 (6th Cir. 2005)).

Kauffung a copy of his objections to the CPO. Although Collins had a right to file objections, the record reflects that he could have requested the Clerk of Courts to serve a copy on Kauffung, but did not do so. Plaintiff's suggestion that service by the Clerk of Courts would also have violated Collins' CPO lacks merit.[6]

Collins' objections all challenge the probable cause determination in various ways. For example, in Objection #1, plaintiff argues that the police did not consider "exculpatory" evidence (i.e., the "filing date-stamp" on the objections), and thus lacked probable cause (Id. at 15-20). In Objection #2, he argues that the police "inaccurately" identified the hand-written envelope and pages mailed by him as a "letter" instead of "objections," and thus lacked probable cause (doc. no. 110 at 20-22). The Magistrate Judge considered and rejected these arguments:

> Officer Brooks questioned Kauffung and examined the handwritten document mailed by Plaintiff, but did not identify it as a document filed in a civil court case. She did not recognize the stamp of the civil Clerk of Court used to denote time and date of a filed document. However, she further testified to her belief that the mailing by Plaintiff to Kauffung constituted a violation of the "no contact" provision of the CPO regardless of the type of document.

(doc. no. 106 at 4, citing Brooks Dep. at 160, 162-163). The Magistrate Judge found that "the officers conducted a reasonable investigation to determine that the CPO had been violated" and explained that:

> It would have been unreasonable to expect the officers – merely through examination of the envelope and document that Plaintiff mailed to Kauffung – to: (1) understand the legal significance of the document under Ohio's civil rules of procedure; (2) know

---

[6] The Clerk of Court functions as an arm of the Court and would not be a "person" subject to the anti-stalking CPO.

**that compliance with a civil rule requiring service of process in a civil case could constitute an exception to the prohibition on "ANY" contact contained in the CPO; and (3) understand that Collin's mailing of Objections might preclude his criminal conviction here.**

(**Id**. at 20). Plaintiff's objections merely repeat prior arguments. Plaintiff has not pointed to any specific errors in the Magistrate Judge's analysis.

Plaintiff also makes a confusing and repetitive argument that the Magistrate Judge erred by deeming "evidence of intent" to be a "defense" that the police were not obligated to consider when determining probable cause, thereby treating violation of a CPO as a "strict liability offense" (doc. no. 110 at 17, Obj. #3). By this, plaintiff apparently means that the police should have recognized the nature of the mailed document and realized that Collins (in his opinion) had a possible "defense," i.e. mailing objections would arguably be an exception to the CPO (even though the CPO prohibited him from initiating "any contact" and listed no exceptions on its face), and thus, according to plaintiff, the police should have known that he did not "recklessly intend" to violate the CPO. Again, plaintiff is restating prior arguments that the Magistrate Judge properly rejected:

> **Focusing on the Defendants' description in support of the warrant that Plaintiff mailed a "letter" to Defendant Kauffung, Plaintiff argues that police should have identified the handwritten Objections for what they were – a type of legal appeal required to be served on Defendant Kauffung, either by Plaintiff or by the Clerk of Court on his behalf. Plaintiff argues that police should have discerned from the face of the document that he possessed a valid legal defense to the criminal charge. However, whether or not Plaintiff's legal defense ultimately would have resulted in acquittal, had the charges not been dismissed, is not at issue here. Instead, this Court is called only to assess whether Officer Brooks reasonably believed on March**

14

> **27, 2009 that the mailing constituted a reckless violation of the CPO. On that issue, and without the 20/20 vision of hindsight, this Court finds only one reasonable determination – that probable cause existed to issue the warrant.**

**(doc. no. 106 at 14). The Magistrate Judge pointed out that "like many of plaintiff's arguments, . . . this argument confuses the ultimate issue of plaintiff's criminal intent with whether probable cause existed for his arrest" (Id. at 20).**

**Plaintiff also attempts to challenge probable cause by alleging that Sgt. Gilmer made "serious misrepresentations" when she notarized the charging documents (doc. no. 110 at 17, Obj. #3). Due to the lapse of time, Sgt. Gilmer testified at deposition that she did not specifically recall this ministerial task from several years ago. In a busy police station, this is not surprising. Plaintiff's contention that Sgt. Gilmer's testimony amounts to "[e]vidence of impropriety in the initiation of the criminal action and misrepresentations to the court" is incorrect and over-stated. Such testimony is _not_ evidence of "impropriety" that would undermine probable cause. Although Collins alleges in conclusory fashion that such testimony raises a "material issue of fact" (Id. at 22), the Magistrate Judge correctly noted that such testimony created no genuine dispute of material fact on summary judgment (doc. no. 106 at 4, fn. 1). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (a dispute of fact cannot be "genuine" unless a reasonable jury could return a verdict for the nonmoving party).[7] Plaintiff's**

---

**[7] Courts must distinguish between evidence of disputed material facts and mere disagreements as to legal implications of the facts. Beard v. Banks, 548 U.S. 521, 529-30 (2006).**

objection lacks merit. The police had probable cause to issue the arrest warrant.

Plaintiff also attempts to challenge probable cause by objecting to the Magistrate Judge's finding that "the CPO was in effect at the time the objections were served on Kauffung" (doc. no. 110 at 26, Obj. #4). Plaintiff interprets Ohio Rule Civ. P. 53(D)(4)(e)(i), which concerns judgments, to mean that enforcement of the CPO was "stayed" because Collins filed objections and that "there was nothing for plaintiff to have violated" (doc. no. 110 at 27). Similarly, in Objection 5, plaintiff urges that the CPO "was stayed at the time he served the Objections" on Kauffung (Id. at 28). In his reply, Collins repeats that "filing timely Objections to the Magistrate's Decision suspended enforceability of the CPO until the Objections are ruled upon" (doc. no. 113 at 4). Plaintiff's interpretation would be inconsistent with the purpose of the statutes governing CPOs and stalking offenses, particularly since the state court imposed a permanent CPO after a full hearing.[8]

Defendants point out that "ultimately [plaintiff's] argument is that the defendants should have known that Mr. Collins had to serve his objections on Mrs. Kauffung under [Ohio] Civil Rule 53(D)(3)(b) ("A party may file written objections to a magistrate's decision") (doc. no. 112 at 5). Defendants assert that plaintiff's argument is based on a misunderstanding of the Ohio rule, which provides that "[w]hether or not objections are timely filed, a court may adopt a magistrate's

---

[8] In fact, the Ohio Civil Rules were amended, effective July 1, 2012, to adopt Civ.R. 65.1(F) which expressly limited the applicability of Civ. R. 53 to CPOs. See Civ.R. 65.1(F)(3)(b) ("A magistrate's denial or granting of a protection order after full hearing under this division does not constitute a magistrate's order or a magistrate's decision under Civ.R. 53(D)(2) or (3) and is not subject to the requirements of those rules.").

16

decision" and that the magistrate's decision is effective upon being adopted by the court. Ohio R. Civ. P. 53(D)(4)(a-b). Here, the Court of Common Pleas adopted the magistrate's decision on March 11, 2009. Ohio R.C. § 2903.14 expressly provides that '[a]n order issued under this section . . . that grants a protection order. . . is a final, appealable order."[9]  Although Collins objects that the Magistrate Judge found that the police "acted in good faith confirmed by their investigation that a valid and enforceable CPO was in effect" (doc. no. 110 at 27), the Magistrate Judge adequately addressed these matters:

> Plaintiff offers a cursory argument that the filing of his Objections might have stayed enforcement of the CPO, citing Ohio Rule Civ. P. 53. Defendants dispute that contention and, in part through the brevity of his argument, Plaintiff concedes that that the CPO was likely enforceable. In any event, the officers would clearly be entitled to qualified immunity based upon their good faith belief, confirmed by their investigation, that a valid and enforceable CPO was in effect.

(doc. no. 106 at 15, fn. 5). Having made a "cursory" argument and having already conceded that that the "CPO was likely enforceable," plaintiff has little basis to object. Moreover, regardless of plaintiff's interpretation of the state procedural rule, the Magistrate Judge recommended that qualified immunity protects the officers from suit and effectively disposes of the claims against them.

### C. Qualified Immunity

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need

---

[9] Ohio Civ. Rule 65.1(G) provides that: "The timely filing of objections under division (F)(3)(d) of this rule shall stay the running of the time for appeal until the filing of the court's ruling on the objections."

to shield officials from harassment, distraction and liability when they reasonably perform their duties." Leavey v. City of Detroit, 467 Fed.Appx. 420, 430 (6th Cir. 2012), cert. denied, 133 S.Ct. 846 (2013). "Determinations of qualified immunity require us to answer two questions: first, whether the officer violated a constitutional right; and second, whether that right was clearly established in light of the specific context of the case." Hayden v. Green, 640 F.3d 150, 153 (6th Cir. 2011). The analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier v. Katz, 533 U.S. 194, 201 (2001).

Plaintiff has not pointed to any specific errors in the Magistrate Judge's analysis of qualified immunity. Plaintiff argues that he was arrested "without probable cause" for various reasons, but misses the point that these are the sorts of mistakes that qualified immunity excuses. "Officers are not personally liable for mistakes or omissions in a warrant unless a plaintiff makes "a substantial showing" that the officer intentionally lied or acted recklessly and unless the false or omitted information was material." Scott v. Sanders, 482 Fed.Appx. 996, 997 (6th Cir. 2012) (per curiam) (quoting Vakilian v. Shaw, 335 F.3d 509, 517 (6th Cir. 2003)). Collins has not made any substantial showing that the officers intentionally "lied" or acted "recklessly," much less that the description of the envelope and contents as a "letter" amounted to a "material falsehood." Officer Brooks viewed the envelope and hand-written pages, but did not recognize them as "objections."

Government officials are entitled to qualified immunity for "objectively reasonable mistakes, regardless of whether the government official's error is a

18

mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." <u>Hensley v. Gassman</u>, 693 F.3d 681, 687 (6th Cir. 2012); <u>Jones v. Sandusky Cty., Ohio</u>, 541 Fed.Appx. 653, 660 (6th Cir. 2013) (citing <u>Simmonds v. Genesee Cty.</u>, 682 F.3d 438, 443 (6th Cir. 2012)); <u>Chappell v. City of Cleveland</u>, 585 F.3d 901, 907 (6th Cir. 2009) (reiterating that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). In light of all the circumstances, and even assuming that officers were mistaken in believing that Collins violated the CPO by mailing the envelope and contents to Kauffung, this is the type of "mistake" that qualified immunity excuses. <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009). The Magistrate Judge correctly explained that officers are entitled to qualified immunity for reasonable mistakes of fact and law.

### D. False Arrest and False Imprisonment

A false arrest claim requires a plaintiff to prove that the arresting officer lacked "probable cause" to arrest the plaintiff. <u>Arnold v. Wilder</u>, 657 F.3d 353 (6th Cir. 2011); <u>Voyticky v. Vill. of Timberlake, Ohio</u>, 412 F.3d 669, 677 (6th Cir. 2005). Plaintiff acknowledges this (doc. no. 110 at 15, Obj. #1, indicating that a "false arrest claim under the 4th Amendment requires proof that the arrest was without probable cause"). The Magistrate Judge pointed out that although Officer Brooks and Sgt. Gilmer participated in the issuance of the arrest warrant, neither officer arrested Collins. Collins was arrested in 2011 pursuant to a facially valid warrant by a Green Township officer who has already been dismissed from this lawsuit. As already discussed, the arrest warrant was supported by probable cause. The

19

Magistrate Judge correctly recommended that this defeats Collins' false-arrest claim. Defendants are entitled to summary judgment on the false arrest claim.

### E. Malicious Prosecution Under State Law

After discussing the false arrest claim, the Magistrate Judge further observed that "there is no evidence that either officer acted with a malicious purpose, in bad faith, or in a wanton or reckless manner . . . [f]or the same reason, plaintiff also cannot prevail on his state law claim of malicious prosecution against the four defendants" (doc. no. 106 at 21). See Robb v. Chagrin Lagoons Yacht Club, Inc., 75 Ohio St.3d 264, 269 (1996) (setting forth the elements as: (1) malicious institution of prior proceedings against the plaintiff by defendant; (2) lack of probable cause to file the prior lawsuit; (3) termination of the prior proceeding in plaintiff's favor; and (4) seizure of plaintiff's person or property during the course of the prior proceeding).

In Objection #6, plaintiff does not address this recommendation, and instead, quibbles with a footnote where the Magistrate Judge indicated that "it is worth noting that malicious prosecution requires a favorable termination of the prior proceeding" and that "other jurisdictions hold that termination based upon the failure of a key witness to appear does not satisfy that element" (doc. no. 106 at 21, fn. 8). Collins' CPO violation charge was "dismissed for want of prosecution" when the key witness did not appear.

Plaintiff objects that such dismissal was a termination in his favor. He relies on some dicta in Ash v. Ash, 72 Ohio St.3d 520, 522 (1995) ("unconditional,

20

unilateral dismissal of criminal charges or an abandonment of a prosecution by the prosecutor or the complaining witness that results in the discharge of the accused generally constitutes a termination in favor of the accused").

The issue actually decided in <u>Ash</u> was whether "a <u>compromise</u> between a defendant in a criminal proceeding and the prosecutor foreclose[s] a later malicious prosecution claim against the complaining witness when the complaining witness was not a party to that compromise." (<u>Id</u>.). The Ohio Supreme Court succinctly held that "the answer to this query is 'yes' " (<u>Id</u>. at 522-23 "Having bought peace the accused may not thereafter assert that the proceedings have terminated in his favor."). The Court also observed that "a proceeding is 'terminated in favor of the accused' only when its final disposition indicates that the accused is innocent." (<u>Id</u>., citing 3 Restatement of the Law 2d, Torts (1977) 420, Section 660, Comment a).

Collins' CPO charge was dismissed for procedural reasons, and he was not "found innocent" on the merits. See <u>Palshook v. Jarret</u>, 32 Fed.Appx. 732, 736 (6th Cir. 2002), 2002 WL 504966, *4 ("plaintiff must demonstrate that the charges were actually adjudicated on the merits in his favor"); <u>Buchanan v. Reeve</u>, 2005 WL 1652188, *8 (S.D.Ohio) ("under Ohio law, a plaintiff in a malicious prosecution action must demonstrate that he was absolved of any wrongdoing"). Collins was not "absolved" of any wrong-doing, rather, he obtained a windfall based on a failure of service and the state court's refusal to grant a continuance.

In any event, even assuming that the dicta in <u>Ash</u> means that plaintiff could

satisfy the third element of the claim (i.e., termination of the state case in his favor), the Magistrate Judge correctly found no genuine disputes of material fact as to other elements of the claim. Plaintiff's objection to the footnote therefore provides no grounds to over-rule the Magistrate Judge's recommendation that the defendants are entitled to summary judgment on this claim.

### F. Malicious Prosecution Under Federal Law

Plaintiff objects to the Magistrate Judge's recommendation that the federal claim of malicious prosecution fails "because of the existence of probable cause to arrest" (doc. no. 110 at 28, Obj. #5, citing doc. no. 106 at 22-23).[10] Plaintiff correctly notes that probable cause <u>to arrest</u> is "distinct" from probable cause <u>to prosecute</u>. In support of his objection, plaintiff repeats his prior argument that the permanent court-ordered CPO was purportedly "of no effect" due to his filing of objections to the CPO. The Court has already discussed the procedural issue of whether the CPO was in effect.

The Magistrate Judge correctly cited the elements of this claim (doc. no. 106 at 22). Specifically, a plaintiff must show that: (1) a prosecution was initiated against the plaintiff and that the defendant participated in the decision; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty as a consequence of the legal proceedings; and (4) the criminal proceeding was resolved in the plaintiff's favor. <u>Sykes v. Anderson</u>, 625 F.3d 294, 308–09 (6th Cir. 2010). Such claim fails "when there was probable cause

---

[10] Although plaintiff mis-captions this objection, the argument is apparent.

to prosecute." <u>Fox v. DeSoto</u>, 489 F.3d 227, 237 (6th Cir. 2007).

The Magistrate Judge correctly cited cases holding that there must be "probable cause to prosecute." See, e.g., <u>Wiley v. Oberlin Police Dept</u>., 330 Fed.Appx. 524, 529 (6th Cir. 2009) (affirming summary judgment to defendants on § 1983 claim for malicious prosecution for the charge of violating a protective order). While the Magistrate Judge did indicate that such claim fails "based upon the existence of probable cause for issuance of the arrest warrant" (doc. no. 106 at 23), the record reflects that there was probable cause to prosecute the CPO violation charge. Upon de novo review of the record, the Court finds that the police officers had probable cause to issue the arrest warrant, and in turn, the documentation and information (including Kauffung's affidavit and the officer's confirmation of the existence of a CPO against Collins) provided sufficient evidence of probable cause to prosecute Collins for violating the express terms of the CPO. See, e.g., <u>Darrah v. City of Oak Park</u>, 255 F.3d , 301 312 (6th Cir. 2001) ("if this court finds that there was probable cause to prosecute Darrah, . . . then she cannot make out a malicious prosecution claim under the Fourth Amendment.").

G. Objection #7

Finally, plaintiff objects to "the Magistrate's Report and Recommendation insofar as the Magistrate determined that because under Ohio R.C. § 2935.09 a police officer could file an affidavit and complaint to cause an arrest, the fact that defendant Kauffung signed and initiated the criminal proceedings is immaterial" (doc. no. 110 at 30). The gist of plaintiff's objection appears to be that because

Kauffung signed the affidavit and complaint, Collins was purportedly arrested without probable cause due to the City's "policy" of the police forwarding complaints for the violation of a CPO to the Clerk of Courts for issuance of an arrest warrant. Plaintiff appears to misunderstand the role of a complaining witness, whose affidavit contributes to the officer's probable cause determination.

The Magistrate Judge pointed out that plaintiff "concedes that Ohio law permits police to execute affidavits to initiate criminal proceedings upon probable cause" (doc. no. 106 at 23, citing doc. no. 47 at 8, ¶ 11). The Magistrate Judge further observed that "the issue of whether the City violated or encouraged violation of a state procedural requirement [Ohio R.C. § 2935.09] is relevant only insofar as plaintiff can prove that the City caused a constitutional violation" (Id. at 24). A plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged constitutional violation occurred because of a municipal policy or custom. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Graham v. Cty. of Washtenaw, 358 F.3d 377, 383 (6th Cir. 2004) (same). Since probable cause existed for issuance of the arrest warrant, plaintiff was not arrested in violation of the Fourth Amendment. Absent any such constitutional violation, the Magistrate Judge appropriately concluded that the City is entitled to summary judgment.

## V. Conclusion

Upon a de novo review of the record, especially in light of plaintiff's objections, the Court finds that the Magistrate Judge has accurately set forth the controlling principles of law and properly applied them to the particular facts of

this case. The Court agrees with the Magistrate Judge's recommendations and hereby adopts and incorporates by reference herein, the Report and Recommendation of the United States Magistrate Judge (doc. no. 106).

## VI. Oral Argument Not Warranted

Local Rule 7.1(b)(2) provides that courts have discretion whether to grant requests for oral argument. The parties have fully briefed the relevant issues and have not requested oral argument. The Court finds that oral argument is not warranted. <u>Himes v. U.S.</u>, 645 F.3d 771, 783-84 (6th Cir. 2011); <u>Yamaha Corp. of Am. v. Stonecipher's Baldwin Pianos & Organs</u>, 975 F.2d 300, 301-02 (6th Cir. 1992); <u>Schentur v. U.S.</u>, 4 F.3d 994, 1993 WL 330640 at *15 (6th Cir. (Ohio)) (district courts may dispense with oral argument for any number of sound judicial reasons).

Accordingly, the Court <u>OVERRULES</u> the plaintiff's "Objections" (doc. no. 110); <u>ADOPTS</u> the Report and Recommendation; and <u>GRANTS</u> both "Motions for Summary Judgment" (doc. nos. 85, 86). Plaintiff shall bear the costs of this case. This case is <u>DISMISSED</u> and <u>TERMINATED</u> on the docket of this Court.

IT IS SO ORDERED.

                                   s/Herman J. Weber
                          Herman J. Weber, Senior Judge
                          United States District Court